UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EMISSIVE ENERGY CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>ARMAMENT SYSTEMS AND PROCEDURES, INC. and COVE CUTLERY, LTD.,<br><br>Defendants. | : | C.A. NO. 03-528L |

FILED
JUN 09 2005
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

**PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Plaintiff, Emissive Energy Corporation ("Emissive"), hereby objects to defendant, Armament Systems and Procures, Inc.'s, Motion to Compel Production of Documents. In support of its Objection, Emissive relies on the Memorandum of Law filed herewith.

Respectfully submitted,

EMISSIVE ENERGY CORPORATION
By its Attorneys

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701

Dated: June 9, 2005

**CERTIFICATE OF SERVICE**

TO: William R. Grimm, Esq.
Brent R. Canning, Esq.
1500 Fleet Center
Hinckley Allen & Snyder LLP
Providence, Rhode Island 02903

Richard S. Kuhlman
Wolin & Rosen, Ltd.
55 West Monroe Street, Suite 3600
Chicago, IL 60603

Wanda E. Jones, Esq.
Jones Law Office
60 North Jefferson
P. O. Box 1759
Nashville, IN 47448-1759

I hereby certify that on this 9 day of June, 2005, I caused to be forwarded by First Class Mail a copy of the within *Objection* to the above-named counsel of record.

Theresa Benson

*H:\Clients\Emissive Energy\ASP\ASP (RHODE ISLAND)\pleadings\Obj MCompel Docs.DOC*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

FILED
JUN 0 9 2005
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

EMISSIVE ENERGY CORPORATION, :
Plaintiff, :
vs. : C.A. NO. 03-528L
ARMAMENT SYSTEMS AND PROCEDURES, INC. and COVE CUTLERY, LTD., :
Defendants. :

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Defendant, Armament Systems and Procedures, Inc. ("ASP") has moved for an Order of this Court compelling plaintiff, Emissive Energy Corporation ("Emissive"), to respond to certain Requests for Production of Documents. For the reasons set forth herein, Emissive respectfully requests that ASP's Motion be denied.

**DISCOVERY IN DISPUTE**

**REQUEST FOR PRODUCTION NO 7:**

Request No. 7 sought documents that refer or relate to the first disclosure of the subject matter of the '226 Patent and then asks Emissive to "identify" the first sale or offer for sale of the subject matter of the '226 Patent, the first description of the subject matter of the '226 Patent in a printed publication, and/or the first public use of the subject matter of the '226 Patent.

Emissive objected to the first part of Request No. 7 because it seeks information that is not relevant to any claims or defenses of either party. ASP is only entitled to information concerning

disclosures of the subject matter of the '266 Patent if it has a factual basis to invalidate the '226 Patent pursuant to 35 U.S.C. § 102. But since ASP has conceded that it is not seeking to invalidate the '226 patent (Exhibit A, p. 3, Supplemental Answer to Interrogatory No. 10), it is not entitled to the information sought in Request No. 7.

The remainder of Request No. 7 is improper. Pursuant to Rule 34, ASP may request that Emissive produce documents or information, but it may not seek a narrative response in response to a Request for Production of Documents. For all these reasons, Emissive respectfully requests that the Court deny ASP's Motion to Compel concerning Request for Production No. 7.

**REQUEST FOR PRODUCTION NO 8:**

Request for Production No. 8 sought the same information as Request No. 7, except that it relates to the '973 Patent. Though ASP was under a Court Order to provide information concerning the factual basis for its invalidity defense concerning the '973 Patent, ASP failed to do so (Exhibit A, p. 3, Supplemental Answer to Interrogatory No. 11). Until ASP identifies the factual basis for any contention that the '973 Patent is invalid, this is nothing more than an exploratory exercise, and ASP is not entitled to the information.

ASP also is not entitled to a narrative response to Request for Production No. 8 for the reasons set forth *infra*. For all these reasons, Emissive respectfully requests that the Court deny ASP's Motion to Compel concerning Request for Production No. 8.

**REQUEST FOR PRODUCTION NO 9:**

Request for Production No. 9 sought documents that refer or relate to Emissive's first awareness of ASP's "Eclipse" product that allegedly infringes the '226 and '973 Patents or that mentions directly or indirectly ASP's allegedly infringing product. To preserve its rights, Emissive objected that the Request appears to implicate both the attorney-client privilege and the

work product doctrine and then indicated that there are no non-privileged documents responsive to the Request. To be clear — Emissive has no documents responsive to Request No. 9 at this time. For this reason, Emissive respectfully requests that the Court deny ASP's Motion to Compel concerning Request for Production No. 9.

**REQUEST FOR PRODUCTION NO 25:**

Request No. 25 seeks "all documents and things relating to the sales and marketing efforts by or on behalf of EMISSIVE regarding any LED lights including, but not limited to, communications and correspondence between EMISSIVE and all actual or potential distributors, importers, wholesalers, manufacturers, manufacturers' representatives, retailers, agents, advertising agencies, fulfillment agents, trade publications, or periodicals, or any other individuals or entities with whom, or with which, Plaintiff exchanged such documents." Emissive objected to the Request because it is overly broad and seeks information that is not relevant to the claims or defenses of either party.

First, it had to be clarified that ASP was seeking information only concerning the one Emissive flashlight that embodies the '226 Patent and the '973 Patent; ASP's counsel agreed that it was not seeking information concerning any of the other handheld flashlights manufactured by Emissive.

Notwithstanding that, the Request remains overly broad. In its Motion to Compel, ASP does not articulate how the categories of information sought in Request No. 25 are relevant to this dispute, likely because Emissive's sales and marketing efforts, its communications with its distributors and its exchange of documents with periodicals (among the other categories of information sought) are not relevant to the damages ASP will owe Emissive if it is found liable for infringement. Those damages will be calculated using the "reasonable royalty" analysis, which does not implicate or rely on communications Emissive had with anyone. For all these reasons,

Emissive respectfully requests that the Court deny ASP's Motion to Compel concerning Request for Production No. 25.

**REQUEST FOR PRODUCTION NO. 26:**

Request for Production No. 26 sought "All documents and things that identify, refer, or relate to any and all of any Defendant's customers or potential customers for LED lights, and communications and correspondence therewith." The true answer to the Request for Production is "none" – Emissive has no documents or things that identify or relate to any of Defendant's (ASP) customers or potential customers for LED lights. Assuming that ASP made a typographical error in identifying Emissive as "Defendant," Emissive objected that the Request was overly broad and the information sought was irrelevant.

ASP now argues that the requested marketing information is relevant because it is pertinent to the "reasonable royalty" analysis and cited one case, *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), modified and aff'd, 446 F.2d 295 (2d Cir.), cert. denied, 404 U.S. 870, 30 L. Ed. 2d 114, 92 S. Ct. 105 (1971), as the basis for its argument.[1] But the five years of historical information, and, more importantly, the prospective information, are not relevant to that calculus.

In determining a reasonable royalty, the Federal Circuit has "endorsed the conceptual framework of a hypothetical negotiation between patentee and infringer as a means for determining a reasonable royalty." *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1384 (Fed. Cir. 2001). Factors relevant in a reasonable royalty determination using this

---

[1] Neither this Court nor the First Circuit Court of Appeals has cited *Georgia-Pacific* in the thirty-four years since it was decided by the United States District Court for the Southern District of New York.

method may include those set out in *Georgia-Pacific*. *See Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 n.7 (Fed. Cir. 1995).[2] The *Georgia-Pacific* case enunciates factors a fact finder may consider in determining what damages to assess for infringement based on "hypothetical negotiations" between the patentee and infringer. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996).[3]

ASP relies on *Georgia-Pacific* Factor 8 ("The established profitability of the product made under the patent; its commercial success; and its current popularity") to support its effort to collect over five years of Emissive's financial information. But Factor 8 addresses three things: established profitability, commercial success and current popularity. Nothing in Factor 8 entitles ASP to documents and things that identify, refer, or relate to any and all of any Defendant's customers or potential customers for LED lights, or communications and correspondence with those current and prospective customers.

Accordingly, since ASP's Request for Production and its Motion to Compel seek five years of information, none of which is included within the *Georgia-Pacific* Factor 8, ASP's Motion to Compel should be denied.

**REQUEST FOR PRODUCTION NO. 27:**

In Request for Production No. 27, ASP sought (from January 2000 to present) all reports or other documents that either state or summarize the following information, or from

---

[2] Emissive discusses the *Georgia-Pacific* factors because ASP raised and relied on them; Emissive does not concede that those factors should be applied in this case.

[3] The determination of the amount of damages based on a reasonable royalty is an issue of fact. *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991).

which all or any part of the following information may be derived:

(A) the quantity of any LED lights manufactured, imported, offered for sale, sold, consigned, or exchanged for other goods by EMISSIVE, identifying each light by name or model number, and the price at which, and the date on which, each such LED light was sold or offered for sale, consigned or exchanged or other goods by the EMISSIVE through the present;

(B) EMISSIVE's inventory levels, in units and dollars, of any LED lights;

(C) the quantity and value of all LED lights manufactured, imported, sold, offered for sale, consigned, or exchanged for other goods, shipped or sent to any entity or customer by or on behalf of EMISSIVE through the present;

(D) the direct or indirect, fixed or variable costs attributable to the manufacture, production, and/or purchase of LED lights by EMISSIVE;

(E) the net profit that EMISSIVE has realized from the sale or exchange for other goods of any LED lights on a monthly basis;

(F) customer returns and credits granted to customers for return of LED lights to EMISSIVE;

(G) complaints received by EMISSIVE or any of EMISSIVE's distributors or dealers regarding any LED lights.

Emissive objected that the Request was overly broad and the information sought was irrelevant.

Again, ASP relies on *Georgia-Pacific* Factor 8 ("The established profitability of the product made under the patent; its commercial success; and its current popularity") to support its effort to collect over five years of Emissive's financial information. But *Georgia-Pacific* does not support ASP's request. ASP cannot articulate, for example, how Emissive's inventory levels (in units and dollars) would be of any relevance in determining a reasonable royalty.

Moreover, since *Georgia Pacific* was decided, the Federal Circuit has emphasized repeatedly that, in considering the "hypothetical negotiation" framework, "the negotiation must be hypothesized as of the time infringement began." *Interactive Pictures*, 274 F.3d at 1384; *see*

*also Unisplay,* 69 F.3d at 518 (rejecting expert testimony where the court found that the expert was testifying to what the parties might arrive at the time of the trial and concluding that such "testimony was not directed to the proper reasonable royalty criterion and therefore cannot support the jury's verdict"); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983) ("The key element in setting a reasonable royalty . . . is the necessity for return to the date when the infringement began") (quoting *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1158 (6th Cir. 1978)).

ASP has sworn that it conceived of the accused product between June 17, 1997 and September 23, 2000. (Exhibit A, pp. 2-3, Defendant's Supplemental Answer to Interrogatory No. 4.) It purportedly ordered tooling and began selling the accused work shortly thereafter.[4] Accordingly, to the extent ASP is entitled to any of the information it seeks, it is limited to information as of September 23, 2000, which is when the hypothetical negotiations would have begun as represented by ASP. Since it is in ASP's interests to limit any damages assessed against it, presumably ASP will argue that Emissive's royalty damages are limited to September 23, 2000, and accordingly it needs no information beyond that period.

For all these reasons, ASP's Motion to Compel concerning Request for Production No. 27 should be denied.

---

[4] Without further discovery, Emissive cannot know whether this statement is true but at this time has no choice but to rely on ASP's sworn testimony concerning its purported dates of conception.

**REQUEST FOR PRODUCTION NO. 34:**

Request for Production No. 34 sought "Each document showing sales of LED flashlights manufactured or sold by EMISSIVE, including, for example, sales invoices, customer purchase orders, shipping documents and correspondence." Emissive objected to Request No. 34 because it was overly board and sought information not relevant to the claim or defense of either party.

Again, ASP argues that the *Georgia-Pacific* case entitles it to all Emissive's manufacturing and sales information concerning the microlight. But ASP is wrong. For example, ASP cannot articulate how the number of units manufactured by Emissive by September 2000 would have affected the hypothetical reasonable royalty it would have negotiated.

And, again, the sales information ASP seeks is far too expansive. Assuming ASP is arguing for a low royalty based on its alleged September 23, 2000 conception date, ASP is not entitled to any information after that date. For all these reasons, ASP's Motion to Compel concerning Request for Production No. 34 should be denied.

**REQUEST FOR PRODUCTION NO. 36:**

Request No. 36 sought "All documents referring or relating to projections of sales, actual sales, prices, profitability, net profit margins, and/or gross profit margins for each and every LED flashlight made, offered for sale, and/or sold by EMISSIVE." (Emphasis added.) For all of the reasons articulated *supra*, sales projections are not relevant to the calculation of the hypothetical reasonable royalty, and ASP is not entitled to the information. For this reason, and as more fully articulated previously, ASP's Motion to Compel concerning Request for Production No. 36 should be denied.

**REQUEST FOR PRODUCTION NOS. 37 and 38:**

Requests Nos. 37 and 38 seek "All documents referring or relating to any agreement, understanding, or contract between EMISSIVE and any party concerning LED flashlights including, but not limited to, indemnifications, licenses, assignments, and covenants not to sue with respect to such LED flashlights, rights relating thereto, and/or the '226 and/or '973 Patents" and then "documents referring or relating to any royalty payments, license fees, or user fees paid or received by EMISSIVE for LED flashlights."[5]

ASP argues that it is entitled to the information under *Georgia-Pacific* Factors 1 ("The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty") and 3 ("The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold"). Neither supports ASP's argument.

Factors 1 and 3 concern situations where there are "established royalties" for the patented technology. There is no "established" royalty here because Emissive has never licensed or charged a royalty for use of the '226 Patent or the '973 Patent.[6] Thus, there are no licensing or assignment documents that Emissive claims will be probative of an "established royalty" under either Factor 1 or Factor 3. For all these reasons, ASP's Motion to Compel concerning Request for Production Nos. 37 and 38 should be denied.

---

[5] Emissive again confirmed that ASP has limited its Requests solely to the handheld flashlight that embodies the '226 Patent and the '973 Patent.

[6] Emissive entered into a Settlement Agreement in one other litigation that involved infringement of the '226 Patent and certain Emissive trademarks. That document is inadmissible per Rule 408 and is of no probative value here.

Respectfully submitted,

EMISSIVE ENERGY CORPORATION
By its Attorneys

Christine Bush

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701

Dated: June 9, 2005

**CERTIFICATE OF SERVICE**

TO: William R. Grimm, Esq.
Brent R. Canning, Esq.
1500 Fleet Center
Hinckley Allen & Snyder LLP
Providence, Rhode Island 02903

Richard S. Kuhlman, Esq.
Wolin & Rosen, Ltd.
55 West Monroe Street, Suite 3600
Chicago, IL 60603

Wanda E. Jones, Esq.
Jones Law Office
60 North Jefferson
P. O. Box 1759
Nashville, IN 47448-1759

I hereby certify that on this 9 day of June, 2005, I caused to be forwarded by First Class Mail a copy of the within *Memorandum of Law* to the above-named counsel of record.

Theresa Benson

*H:\Clients\Emissive Energy\ASP\ASP (RHODE ISLAND)\pleadings\Mem Obj MCompel Docs.DOC*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| EMISSIVE ENERGY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ARMAMENT SYSTEMS AND PROCEDURES, INC. and COVE CUTLERY, LTD.,<br><br>Defendants. | ) | Civil Action No. 03-528L<br><br>Judge Lagueux<br><br>Magistrate Judge Martin |

**DEFENDANT ARMAMENT SYSTEMS AND PROCEDURES, INC.'S SUPPLEMENTAL DISCOVERY RESPONSES SUBJECT TO THE HEARING HELD BEFORE THE HONORABLE DAVID L. MARTIN ON MARCH 21, 2005**

Comes now defendant, Armament Systems & Procedures, Inc. ("ASP"), by counsel, Brent R. Canning of Hinckley Allen & Snyder, Wanda E. Jones of the Jones Law Offices; and Richard S. Kuhlman of Wolin & Rosen; and for its Supplemental Discovery Responses subject to the hearing held before the Honorable David L. Martin on March 21, 2005, states as follows:

**RESPONSES TO PRODUCTION REQUESTS**

**REQUEST NO.1**

All documents concerning the conception and design of the Eclipse including, without limitation, blueprints, computerized design information, inventor notebooks, internal memoranda, and test data.

**SUPPLEMENTAL RESPONSE:**

ASP has verified that it has no computerized design information in its possession. Upon checking with MPP, ASP has learned that MPP has Pro-E files of unknown content concerning the Eclipse.

**REQUEST NO. 6**

All communications between ASP and any distributors, retailers and resellers of the Eclipse including, without limitation, Cove Cutlery Co.

**SUPPLEMENTAL RESPONSE:**

See attached list of distributors of the Eclipse light Bates-stamped Nos. 00392 to 00394. In preparing this list, ASP discovered several additional entities that were previously overlooked. These entities are indicated by the designations * or + and their addresses are provided.

**REQUEST NO. 21**

Documents concerning other litigation or claims involving the Eclipse, regardless of whether ASP was the plaintiff, defendant, claimant or respondent including without limitation all cease and desist letters sent by or to ASP concerning the Eclipse and all documents

**SUPPLEMENTAL RESPONSE:**

See attached documents Bates-stamped Nos. 00308 to 00391, correspondence between ASP counsel and the United States Patent and Trademark Office, and correspondence between ASP counsel and Princeton Tectonics counsel.

**ANSWERS TO INTERROGATORIES**

**INTERROGATORY NO. 4**

Describe the process by which the Eclipse was first conceived including, without limitation, the name of each person or entity performing any part of the process and when the Eclipse was conceived.

**SUPPLEMENTAL ANSWER:**

The Eclipse was first conceived at some time prior to September 23, 2000 and subsequent to June 14, 1997.

**INTERROGATORY NO. 8**

Identify all distributors, retailers and resellers of the Eclipse.

**SUPPLEMENTAL ANSWER:**

See Supplemental Response to Production Request No. 6.

**INTERROGATORY NO. 10**

Explain the factual basis for ASP's contention that the '226 Patent is invalid.

**SUPPLEMENTAL ANSWER:**

ASP did not assert an Affirmative Defense alleging the invalidity of the '226 Patent, but reserves the right to do so as discovery continues.

**INTERROGATORY NO. 11**

Explain the factual basis for ASP's contention that the '973 Patent is invalid.

**SUPPLEMENTAL ANSWER:**

As stated in ASP's Affirmative Defense No. 6, "a reasonable opportunity for further investigation or discovery is like to provide evidentiary support that the claims of the '973 Patent are invalid for failing to comply with the provisions of Title 35 of the United States Code, particularly Sections 101, 102, 103 and/or Section 112." Discovery

is still going on in this case. ASP reserves the right to establish the factual basis for the invalidity of the '973 Patent as discovery proceeds. ASP has discovery outstanding to the Plaintiff designed to illicit this information which is due on April 27th. ASP will supplement this response in a timely fashion shortly thereafter.

Respectfully submitted,

ARMAMENT SYSTEMS AND
PROCEDURES, INC.

Kevin Parsons, CEO

William R. Grimm, 1938
Brent Canning, 5546
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)

Wanda E. Jones, Esq.
Jones Law Offices
60 N. Jefferson
P.O. Box 1759
Nashville, IN 47448

Richard S. Kuhlman, Esq.
Michael E. Pildes, Esq.
Wolin & Rosen, Ltd.
55 W. Monroe St.
Suite 3600
Chicago, IL 60603

## CERTIFICATE OF SERVICE

I hereby certify that I mailed a copy of the foregoing Supplemental Discovery Responses to all counsel of record on April 5, 2005.